IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JANE DOE I, as next friend of JANE DOE II, <br><br> Plaintiffs, <br><br> v. <br><br> BIBB COUNTY SCHOOL DISTRICT <br><br> Defendant. | ) ) ) ) ) ) ) CIVIL ACTION NO. 5:12-CV-468 (MTT) ) ) ) ) ) ) |

### ORDER

Before the Court is the Defendant's motion for a mental examination pursuant to Fed. R. Civ. P. 35. (Doc. 51). For the following reasons, the motion is **GRANTED**.

### I.  BACKGROUND

This is a Title IX action Plaintiff Jane Doe I brings on behalf of her daughter, Jane Doe II, based on an alleged sexual assault that occurred while Jane Doe II was enrolled at Northeast High School in Macon. The dispute between the Parties over the mental examination of Jane Doe II has been protracted. It was first brought to the Court's attention during a telephone conference on January 30, 2014. Based on representations by defense counsel, it was the Court's understanding that the evaluation would last about four hours, but counsel was unsure what those four hours would entail. The Defendant was directed to provide the Plaintiffs with a summary of the scope of the proposed evaluation. After correspondence between the Parties, the proposed examination increased from approximately four hours to eight hours. The Court is not happy with the way defense counsel has handled this. Representing to the

Court and opposing counsel that the examination would last approximately four hours and then submitting a proposal for nearly eight hours necessarily precipitated a fight over the issue.  When it became apparent the Parties could not come to an agreement, the Court directed the Defendant to file a Rule 35 motion.  (Doc. 49).

The Defendant moves for a mental evaluation of Jane Doe II conducted by its expert, Dr. Steven Berger.  The proposed evaluation would consist of: (1) a structured clinical interview of approximately 120 minutes broken up over the course of testing; (2) formal psychometric testing to evaluate intellectual functioning (60-90 minutes), individual achievement (60-90 minutes), expressive language (30-60 minutes), memory (60 minutes), and nonverbal intelligence (15-20 minutes); (3) normed-based inventories to assess adaptive behavioral functioning (15-20 minutes) and trauma (15-20 minutes) with access to collateral sources; and (4) a structured interview with Jane Doe I and one or more of Jane Doe II's current teachers, who will also need to complete normed-based inventories.  (Doc. 52-2 at ¶¶ 9, 10, 13).  Dr. Berger states Jane Doe II would not be required to describe the alleged sexual assault in any detail; she may be asked generally how she felt about the incident to assess its impact on her "functional level and emotionality."  (Doc. 52-2 at ¶ 14).  He further opines that "two partial days of testing should be anticipated," but underscores the need for flexibility.  (Doc. 52-2 at ¶ 15).  According to Dr. Berger, this type of psychological evaluation usually involves eight to ten hours of direct assessment.  (Doc. 52-2 at ¶ 4).

The Plaintiffs oppose the motion, but the area of dispute is relatively narrow.  The Parties agree they can come up with a mutually agreeable time and place to conduct the evaluation.  Both sides also agree to the presence of a videographer.  The Plaintiffs

-3-

have no problem with either Dr. Berger's proposed 120-minute interview conducted in the manner he prescribes or with the adaptive behavioral functioning and trauma assessments. What they do oppose is the extensive psychometric testing of Jane Doe II's intellect or cognition, which would take the majority of the time. The Plaintiffs contend there should be no repetitive intelligence/cognition assessment. But if one must be conducted, they propose using an abbreviated intelligence test, or at most, using only a full-scale general intelligence test. With their proposed limitations, they believe the testing can be accomplished in one day of three to four hours, including breaks. If the Court decides to permit the full range of testing, the Plaintiffs ask the Court to order that the evaluation be conducted over two days.

## II.  DISCUSSION

Pursuant to Fed. R. Civ. P. 35, when a party's mental condition is in controversy, the Court may order the party to submit to a mental examination by a suitably licensed or certified examiner on a motion for "good cause." Fed. R. Civ. P. 35(a)(1)-(2). Thus, the movant must establish both that the party's mental condition is "in controversy" and that there is "good cause" for the examination.

The "in controversy" requirement for a mental examination is typically met if: (1) there is a claim for intentional or negligent infliction of emotional distress; (2) a specific mental or psychiatric injury or disorder is alleged; (3) there is a claim of unusually severe emotional distress; (4) the plaintiff offers expert testimony to support a claim of emotional distress; and/or (5) the plaintiff concedes her mental condition is "in controversy." *Bethel v. Dixie Homecrafters, Inc.*, 192 F.R.D. 320, 322 (N.D. Ga. 2000) (citation omitted).

"Good cause" requires a greater showing of need than is contemplated by the "relevancy" standard that guides most discovery requests. *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). Just because "good cause" exists for a particular type of examination does not mean it exists for another. *Id.* "The factors reviewed in determining 'good cause' often merge with those requirements necessary to find that a plaintiff's mental condition is 'in controversy.'" *Bethel*, 192 F.R.D. at 322 (internal quotation marks and citation omitted). Whether the moving party can obtain the desired information by other means is also a relevant consideration. *Schlagenhauf*, 379 U.S. at 118. If the Court orders an examination, it must specify the time, place, manner, conditions, and scope, as well as the person or persons who will perform it. Fed. R. Civ. P. 35(a)(2).

There is no real dispute that Jane Doe II's mental condition is in controversy. The Plaintiffs concede as much (at least as to issues related to her "psychological state" before and after the alleged assault). (Doc. 54 at 8). Further, the Plaintiffs allege that Jane Doe II suffers from specific mental and emotional disorders and has mental and emotional injuries as the result of the Defendant's conduct, which they intend to show through the use of expert testimony. (Doc. 44 at ¶¶ 13, 44). The issue is whether the scope of the mental examination should be limited, either because the Defendant has failed to show "good cause" for the cognitive testing it seeks to conduct or because factors unique to this case warrant the Court exercising its discretion to limit the scope.

Assuming the Defendant is required to show "good cause" for the specific category of cognitive/intelligence testing,[1] the Court finds the Defendant has met its

---

[1] The Court is not so sure the Supreme Court in *Shlagenhauf* intended such a specific showing of good cause.

-4-

burden. According to Dr. Berger, there is a significant contradiction in Jane Doe II's performance on two intelligence tests performed only 15 months apart that cannot be explained by a psychotic disorder. (Doc. 52-2 at ¶¶ 7-9). The first test was given by school psychologist Dr. Iris Crews in early 2011, and the second was provided by Dr. Michael Johns, a private psychologist, in June 2012. (Doc. 52-1 at 4-14, 88-98). While both of the Plaintiffs' experts, Dr. Melanie Bliss and Dr. Patti van Eys, concede there is an unusual discrepancy between the two tests, they contend Jane Doe II's level of intelligence is only marginally relevant to the issues in the case. (Docs. 54-1 at ¶¶ 4, 5, 7, 8; 54-3 at ¶¶ 6-8). Further, both Bliss and van Eys contend their expert opinions placed very little reliance on Jane Doe II's cognitive ability. (Docs. 54-1 at ¶ 8; 54-3 at ¶ 7).

It is clear that Jane Doe II's capacity to consent, her alleged recanting, and her alleged mental and emotional damages are in dispute. Though Bliss and van Eys characterize Jane Doe II's psychiatric disorders as more pertinent to these issues, both experts to some degree rely on Jane Doe II's intelligence level in their opinions.[2] (Docs. 52-3 at 6, 9-10, 14; 52-4 at 3-5, 15-17). It is uncontested that the discrepancy between the two intelligence tests is unusual. Thus, the Defendants have shown good cause for further cognitive testing.

Of course, the Court may limit the scope or manner of the examination. *See* Fed. R. Civ. P. 26(c) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense

---

[2] Dr. Johns, who ultimately recommended that Jane Doe II be deemed not mentally competent for juvenile court proceedings, relied extensively on Jane Doe II's cognitive ability. (Doc. 52-1 at 97-98). As the Defendant points out, the Plaintiffs relied on Dr. Johns's evaluation when responding to an interrogatory about the basis for the assertion that Jane Doe II lacked the capacity to consent. (Doc. 56-2 at ¶ 14).

… ."); *Bethel*, 192 F.R.D. at 323 (explaining Rule 35 examinations are also subject to Rule 26(c)). But the Plaintiffs have not shown such limitation is necessary. "'The appropriate inquiry is whether special conditions are present which call for a protective order tailored to the specific problems presented.'" *Bethel*, 192 F.R.D. at 324 (quoting *Tirado v. Erosa*, 158 F.R.D. 294, 299 (S.D.N.Y. 1994)). While Bliss and van Eys express general concerns that the comprehensive evaluation will unduly stress Jane Doe II, this is not sufficient to show a special circumstance requiring that the examination be limited. The Parties have agreed that the examination should be video recorded, so the Court can address any examination issue that may arise.

Because the Plaintiffs have not shown a reason to limit the proposed examination, the Court is not going to micromanage the examiner by delineating the type of testing he may perform. However, the examination shall be limited to eight hours and shall be conducted over the course of two days. The Parties must come up with a mutually agreeable time and place.

### III.   CONCLUSION

The Defendant's motion (Doc. 51) is **GRANTED**. The Court **ORDERS** that Jane Doe II shall undergo a mental examination conducted by Dr. Steven Berger over the course of two days, for a total time not to exceed eight hours. The examination will be video recorded, but only Jane Doe II, Dr. Berger, and the videographer may be present. The Parties must agree on a time and place for the examination.

**SO ORDERED**, this 20th day of March, 2014.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
