IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JANE DOE I, as next friend of JANE DOE II,<br><br>    Plaintiffs,<br><br>v.<br><br>BIBB COUNTY SCHOOL DISTRICT,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NO. 5:12-CV-468 (MTT)<br>)<br>)<br>)<br>)<br>) |

## ORDER

Plaintiffs Jane Doe I, Jane Doe II's parent and natural guardian, and Jane Doe II have sued Defendant Bibb County School District for an alleged violation of Title IX. Though the second amended complaint asserts a single cause of action, the Parties agree the Plaintiffs are asserting two separate theories of liability: one based on the Defendant's conduct before Jane Doe II's alleged assault and one based on the Defendant's conduct after Jane Doe II's alleged assault. Before the Court is the Defendant's motion for partial judgment on the pleadings on the Plaintiffs' first theory of liability. (Doc. 71). The Plaintiffs requested the Court to consider materials outside the pleadings and treat the motion as a motion for partial summary judgment. *See* Fed. R. Civ. P. 12(d). The Court has converted the motion to one for partial summary judgment and given the Parties time to file any additional materials they wish the Court to consider. *See* Text Only Entry, December 3, 2014. For the following reasons, the motion for partial summary judgment is **GRANTED**.

## I.     BACKGROUND

Plaintiff Jane Doe II was a special education student at Northeast High School, one of the schools in the public school system operated by Defendant Bibb County School District. (Doc. 44, ¶¶ 11, 14).[1] During the relevant time period, Jane Doe II was a student in Oslynn Brown's fourth block class. (Doc. 44, ¶ 21). On January 19, 2012, a male student came to Brown's fourth block class and told her another teacher needed to see Jane Doe II. Brown allowed Jane Doe II to leave her classroom with the student. (Doc. 44, ¶ 22). The student then led Jane Doe II to a boys' restroom inside the school where he and at least five other male students raped and sodomized her. (Doc. 44, ¶¶ 23-24). These male students were allegedly members of a gang known as MOB, which stands for "Money over Bitches." (Doc. 44, ¶ 25). It is undisputed that Jane Doe II was never sexually assaulted by another Northeast student prior to the January 19 incident and that the male students involved were never previously accused of sexually assaulting another Northeast student.

The Plaintiffs' theory of liability concerning the Defendant's conduct before Jane Doe II's assault is primarily based on two prior incidents of student-on-student sexual assault and the Defendant's responses. The first incident occurred in 2002 when a female student was allegedly raped in a girls' restroom at Westside High School, another school in the public school system operated by the Defendant. After Assistant Principal Lynn Donehoo learned of the alleged assault, she watched surveillance video to confirm the report and informed the principal and William "Mitch" Mitchell, the Director

---

[1] The facts regarding the alleged assault on Jane Doe II are taken from the Plaintiffs' second amended complaint. (Doc. 44). Though the Court has converted the partial motion for judgment on the pleadings into a partial motion for summary judgment pursuant to Rule 12(d), the evidence outside the pleadings pertains to the Defendant's "actual knowledge" of a problem of student-on-student sexual assault prior to Jane Doe II's alleged assault.

of Student Safety.  (Docs. 88 at 34:3-24, 36:1-18, 37:10-20, 39:6-13; 96-1, ¶ 7).[2]  After Mitchell investigated, the school administrators concluded a female student, B.H., stayed after school and agreed to have sex with a male student in the girls' restroom.  (Doc. 96-1, ¶ 10).  B.H. was then sexually assaulted by three or four other male students in the restroom.  (Doc. 96-1, ¶ 10).  According to Donehoo, locks were added to the bathroom doors and the doors across from the gym at Westside a month or two after the incident.  (Doc. 88 at 43:23-44:11).  The doors remained locked during and between classes, but a student could obtain a key from a teacher to use the restroom.  (Doc. 88 at 44:12-17).

The second incident occurred in 2008 when T.B., a female special education student, was raped in the Practical Assessment Exploration Skills ("PAES") lab at Northeast High School.  On the day the rape occurred, Ethel Glover, the lead special education teacher, and Khoriandre Watkins-Ware, T.B.'s special education teacher, were conducting Individual Education Program ("IEP") meetings.  (Doc. 77-5 at 3-4).[3] Glover generally unlocked the PAES lab in the morning because she was under the impression that doors in the school were to remain unlocked.  (Doc. 77-5 at 4). Assistant Principal Jeffrey Ashley and Assistant Principal Elizabeth Ricks denied there was a policy against doors being locked.  (Doc. 77-5 at 10-11).  Because she had not arranged for supervision of her students during the IEP meeting, Watkins-Ware had her students go to the PAES lab.  (Doc. 77-5 at 6-7).  There were no adults in the lab at the time.

---

[2] All citations to deposition pages correspond to the deposition page numbers, as opposed to the CM/ECF page numbers.

[3] This document is a summary of MaDonna Baker's interviews following the 2008 incident.  The Defendant has not objected to the Court's considering it on summary judgment.

MaDonna Baker, an investigator for the Department of Student Safety, immediately informed Deputy Superintendent Sylvia McGee of the incident. (Docs. 96-2, ¶ 13; 81 at 56:24-57:10). McGee directed Baker to follow the normal protocol for a full investigation and to notify the Macon Police Department. (Docs. 96-2, ¶ 13; 81 at 58:13-22). Both Baker and Director of Student Safety Robert Sumowski participated in the investigation, though Baker was the lead investigator. Baker submitted reports to McGee and the School District's attorney, and Sumowski submitted his notes. (Docs. 96-2, ¶¶ 16-17; 80 at 34:23-36:25).

After these reports were submitted, McGee convened a meeting with Baker, Sumowski, a School District attorney, a representative of the District Campus Police Department, a representative of the District's Human Resources Department, and Donna Poole, Director of the District's Program for Exceptional Children. (Docs. 96-2, ¶ 18; 80 at 22:18-25, 37:1-6, 78:17-22). They determined Watkins-Ware violated school policy when she left a classroom unsupervised and unlocked. (Docs. 96-2, ¶ 19; 81 at 59:8-20; 79 at 46:1-16). Watkins-Ware tendered her resignation to the School District but was later reinstated under certain conditions. (Docs. 96-2, ¶¶ 19, 20; 81 at 61:14-22).[4]

The team of District officials also determined that Glover violated school policy by failing to report the rape allegation immediately after she learned of it, but her failure did not hamper the school administration's ability to respond because the incident was reported by another source. (Doc. 96-2, ¶ 21). Glover was reprimanded in a memo

---

[4] The Plaintiffs dispute that Watkins-Ware's resignation was ever effectively accepted by the District but do not dispute that she tendered her resignation or that she returned to work for the District subject to certain conditions. (Doc. 99-1). The document cited is a July 9, 2008 letter from F. Bradford Wilson, Jr., who represented Watkins-Ware at the time, stating their position that Watkins-Ware's resignation was not ever officially accepted.

from McGee and a memo from Poole on which McGee, Principal Sam Scavella, and Northeast Zone Coordinator Sabrenai Brown were copied.  (Docs. 77-7; 77-8).  Poole informed Glover that "failure by [her] to secure substitute teachers for special education teachers during their IEP meetings will result in further disciplinary action against [her] and/or [her] termination."  (Doc. 77-8).

After the 2008 incident, Northeast implemented a policy requiring teachers to monitor the hallways during the first fifteen or twenty minutes of their planning periods.  (Doc. 79 at 37:6-39:8).  The Plaintiffs do not dispute this but contend it is immaterial because of "the absence of evidence that the District continued to require hall monitoring, including hall passes, at Northeast High School or elsewhere in its system."  (Doc. 99 at 9-10).  Northeast also retained additional campus police officers and ordered additional radios for faculty and police communication.  (Doc. 79 at 37:6-21).  However, the Plaintiffs also contend this is immaterial because of "the absence of evidence that the District continued to retain additional campus police[ ] or that staff members were required to use such radios to communicate."  (Doc. 99 at 10).[5]

In addition to evidence about the two prior assaults, the Plaintiffs have presented evidence regarding the Defendant's policies on sexual harassment prior to the alleged attack on Jane Doe II.  Quintin Green, the principal at Northeast during the 2011-2012 school year, testified that teachers' training regarding sexual harassment consisted of

---

[5] The Plaintiffs submitted an email sent about a week after Jane Doe II's alleged assault from Lynn Farmer, a former Board of Education member, to Romain Dallemand, the superintendent at the time of Jane Doe II's assault, pertaining to the settlement of T.B.'s lawsuit and inquiring what "processes and controls for safety" were "put in place at Northeast" since the 2008 incident. (Doc. 77-10). The Defendant admits the Board of Education was aware of the settlement prior to the 2012 incident but maintains that Farmer's inquiry is not relevant to the issues on summary judgment. (Doc. 90-1, ¶ 4). The email does not add any information about what was done after the 2008 incident. Thus, the Court agrees the email is not relevant to the issues on summary judgment.

-5-

his reading a District policy to them at the beginning of the school year. (Doc. 82 at 12:16-13:6, 15:19-16:5).[6] Brown, Jane Doe II's teacher, did not receive this training because she did not start teaching at Northeast until midway through the school year in January 2012. (Docs. 82 at 23:23-25:21; 83 at 51:23-52:9).

The Plaintiffs have also submitted the affidavits of Dr. Jimmy Stokes, the Executive Director of the Georgia Association of Educational Leaders, and Dr. Emily Collins, the Pupil Services Coordinator (Special Education and School Psychology) for the Chattahoochee-Flint division of the Georgia Regional Education Service Agency. (Docs. 77-22; 77-23). Both Stokes and Collins give examples of policies they are familiar with, such as hall passes, which are implemented in Georgia schools. Stokes goes on to opine on the effectiveness of those policies and what conduct by a teacher would violate the policies.

## II.   OBJECTIONS

The Defendant objects to: (1) evidence of the Defendant's alleged non-compliance with Department of Education regulations; (2) evidence of the Defendant's remedial measures or available policies the Defendant could have used to prevent student-on-student sexual harassment; and (3) statistical evidence regarding students' violations of school rules involving certain sex crimes the Defendant reported to the Georgia Department of Education.

---

[6] The Plaintiffs cite Green's deposition for the proposition that "Northeast staff members were trained about sexual harassment issues by listening to Mr. Green read passages from the school district's Code of Conduct for Students, which merely defined prohibited sexual harassment and admonished students from engaging in it." (Doc. 77 at 10). Actually, according to Green's deposition, teachers were read the District policy on sexual harassment and students were read the Code of Conduct for Students. (Doc. 82 at 15:19-16:5).

The Court agrees evidence of the Defendant's alleged noncompliance with Department of Education regulations is not relevant because such a violation cannot be a basis for a Title IX claim.  *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291-92 (1998).  Therefore, the Court will not consider this evidence on summary judgment.

The Defendant contends evidence of its policies or policies it could have used to prevent student sexual harassment is not relevant to the issue of actual knowledge and would only be relevant to whether it was deliberately indifference.  Because the elements of a Title IX claim are often intertwined, exclusion of all evidence of the Defendant's policies or its responses to the 2002 and 2008 incidents is not warranted.

The Defendant also objects to the Stokes and Collins affidavits discussing the effectiveness of different school policies because (1) their affidavits only go to the reasonableness of the Defendant's policies prior to the January 19 incident and thus are only relevant to the deliberate indifference element, and (2) they are expert opinions by individuals who were not previously identified as experts.  Unlike evidence of how the Defendant responded to the 2002 and 2008 incidents, which could be relevant to the Defendant's actual knowledge, outside opinions about the reasonableness of school policies and evidence about the policies generally implemented at Georgia schools are not relevant to the issues on summary judgment.  Thus, the Court will not consider the affidavits in deciding the motion, regardless of whether they are properly characterized as expert opinions.

Finally, as to the statistical evidence, the Court finds it is not relevant to the issues on summary judgment.  Other than the type of sex crime, the year, and the

public school system in which it was committed, there is no indication of the circumstances surrounding the incidents. Generalized knowledge of past harassment is not sufficient to impose liability under Title IX.[7]

### III. DISCUSSION

#### A. Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 12(d), if matters outside the pleadings are considered, a Rule 12(b)(6) motion must be treated as a motion for summary judgment under Rule 56. "[P]arties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The non-moving party

---

[7] *See infra* pp. 12-18.

does not satisfy her burden "if the rebuttal evidence is merely colorable, or is not significantly probative of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson*, 477 U.S. at 255.

**B.    Analysis**

The Plaintiffs have sued the Defendant for alleged violations of Title IX, which provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Although Title IX does not expressly authorize a private right of action, the Supreme Court has held that an implied right of action for money damages exists. *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 76 (1992); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979). In certain circumstances, student-on-student sexual harassment can give rise to Title IX liability. *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999). Such harassment is only actionable if: (1) the defendant is a federal funding recipient; (2) "an appropriate person [has] actual knowledge of the discrimination or harassment the plaintiff alleges occurred"; (3) the defendant is deliberately indifferent to known acts of harassment; and (4) the discrimination is "so severe, pervasive, and objectively offensive that it effectively

bars the victim's access to an educational opportunity or benefit." *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1293 (11th Cir. 2007) (internal quotation marks and citations omitted). A Title IX violation can be based on deliberate indifference before an attack that makes a plaintiff more vulnerable to the attack or deliberate indifference after an attack that causes a plaintiff to endure additional harassment. *Ross v. Corp. of Mercer Univ.*, 506 F. Supp. 2d 1325, 1346 (M.D. Ga. 2007).

The Defendant has moved for summary judgment[8] on the Plaintiffs' "before" theory of Title IX liability based on the Plaintiffs' failure to sufficiently show the Defendant had actual knowledge of the harassment. The Eleventh Circuit has made clear that the "actual knowledge" required to hold a federal funding recipient liable need not be knowledge about prior harassment of the specific Title IX plaintiff, but "the substance of the actual notice must be sufficient to alert the school official of the possibility of the Title IX plaintiff's harassment." *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1254, 1257 (11th Cir. 2010). Applying this principle, the court has found that a defendant's knowledge of certain conduct by the same perpetrator, but involving victims other than the Title IX plaintiff, can be sufficient. In *Williams*, the court found actual knowledge sufficient to impose Title IX liability for a student's rape that occurred in a UGA basketball player's dorm room based on UGA officials' recruitment of the basketball player when they allegedly knew about his history of past sexual harassment at other colleges and even though that past misconduct was not as serious as the plaintiff's assault. 477 F.3d at 1288-90, 1294.

---

[8] As discussed above, the Defendant actually moved for partial judgment on the pleadings, but the Court is treating their motion as a motion for partial summary judgment.

In *School Board of Broward County*, the court applied the same logic in a teacher-on-student harassment case and found sufficient actual knowledge based on two prior complaints made by other students about less severe harassment by the same teacher. 604 F.3d at 1257-59. The court did note that "some prior allegations of harassment may be sufficiently minimal and far afield from the conduct underlying the plaintiff's Title IX claim that they would not alert a school district official of the risk of a Title IX plaintiff's sexual harassment." *Id.* at 1258. However, the focus in both of these cases was whether knowledge of prior misconduct or allegations of misconduct was sufficient to alert the defendants that the *same perpetrator* posed a risk of sexual harassment to students. The court did not address whether actual knowledge can be found when the substance of the defendant's knowledge does not involve either the same victim or the same perpetrator.

It is apparent that "the precise boundaries of … 'actual knowledge' … remain undefined." *Ross*, 506 F. Supp. 2d at 1348. Courts have generally described the substance of the "actual knowledge" required to impose Title IX liability as knowledge of a substantial risk of abuse to students. *See, e.g.*, *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1154 (10th Cir. 2006); *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 659 (5th Cir. 1997); *Carabello v. New York City Dep't of Educ.*, 928 F. Supp. 2d 627, 638 (E.D.N.Y. 2013); *Doe A. v. Green*, 298 F. Supp. 2d 1025, 1033 (D. Nev. 2004); *Johnson v. Galen Health Insts., Inc.*, 267 F. Supp. 2d 679, 688 (W.D. Ky. 2003). A more precise inquiry that several district courts have employed is "whether the appropriate official possessed enough knowledge of the harassment that he or she reasonably could have responded with remedial measures to address the kind of

harassment upon which [the] plaintiff's legal claim is based." *Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1030 (E.D. Cal. 2009); *see also Lopez v. Metro. Gov't of Nashville and Davidson Cnty.*, 646 F. Supp. 2d 891, 915 (M.D. Tenn. 2009); *Green*, 298 F. Supp. 2d at 1033 n.2; *Crandall v. New York Coll. of Osteopathic Med.*, 87 F. Supp. 2d 304, 320 (S.D.N.Y. 2000).

Acknowledging this lack of definition, the Plaintiffs argue their "allegations and evidence of student-on-student harassment meet the broadly worded element formulations of both the Supreme Court and the Eleventh Circuit."[9] (Doc. 77 at 26). Courts that have considered a similar theory of liability the Plaintiffs posit in this case— actual knowledge based on previous sexual harassment of different victims by perpetrators with no known history of misconduct—have rejected it. *See Doe v. Blackburn Coll.*, 2012 WL 640046, at *10 (C.D. Ill.) ("Before Plaintiff was assaulted, Blackburn had notice of two prior sexual assaults against students in 2004, but the attackers in both those assaults had been identified. Not until after Plaintiff's assault did Blackburn learn of the prior assault of another student by an unknown assailant. Given these facts, the Court concludes that Blackburn had no actual knowledge of any substantial risk of sexual assault to Plaintiff."); *Schaefer v. Las Cruces Pub. Sch. Dist.*, 716 F. Supp. 2d 1052, 1081 (D.N.M. 2010) ("The Defendants had actual knowledge of three prior incidents of sexual assault by different assailants against different victims, but the most that can be said about the sexual assault to which AS was a victim—the only assault for which the Schaefers seek a remedy—is that the Defendants were put

---

[9] The Plaintiffs also cite the Department of Education Office for Civil Rights' Title IX Guidance ("OCR Guidance"), published at 62 Fed. Reg. 12034. But the portions of the OCR Guidance to which the Plaintiffs point deal with the "severe, pervasive" element of a Title IX claim, an element not at issue in the present motion.

on notice that it was a possibility."); *T.Z. v. City of New York*, 635 F. Supp. 2d 152, 170 (E.D.N.Y.) ("The school cannot be held liable to plaintiff under Title IX for the assault against C.G. under a theory that it knew of past assaults, given that the school's knowledge was generalized, and there was no specific threat posed to C.G. or posed by her assailants."), *rev'd in part on reconsideration*, 634 F. Supp. 2d 263 (E.D.N.Y. 2009).[10]

The only cases the Court has found allowing Title IX claims to go forward when the past harassment did not involve the plaintiff or perpetrators with a known history of misconduct are *Mathis v. Wayne County Board of Education*[11] and *Simpson v. University of Colorado Boulder*.[12] In *Mathis*, the plaintiffs were mothers suing on behalf of their sons who were seventh grade basketball players sexually harassed by eighth grade team members in the school locker room. There was evidence of prior similar incidents of harassment of younger team members in the locker room, and the court found a genuine issue of fact as to whether the coach knew about the prior harassment. 782 F. Supp. 2d at 545-46, 550-51. Thus, both the victims and the perpetrators in *Mathis* were members of specific groups of students that had previously been involved in similar instances of assault, and there was a genuine issue of fact on whether an official knew about the prior incidents.

---

[10] The court in *T.Z.* found a genuine issue of fact on whether the defendant had actual knowledge of the plaintiff's harassment, but the court found prior incidents of sexual harassment at the school insufficient for the actual knowledge element. Summary judgment was initially granted in favor of the defendant because the court determined the plaintiff failed to meet other elements of her Title IX claim. On reconsideration, the court determined there was a genuine issue of fact on those other elements and thus denied summary judgment. However, the court did not revisit its previous findings on actual knowledge.

[11] 782 F. Supp. 2d 542 (M.D. Tenn. 2011).

[12] 500 F.3d 1170 (10th Cir. 2007).

In *Simpson*, the plaintiffs were sexually assaulted by football players and recruits of the University of Colorado at Boulder. The Tenth Circuit held there was sufficient evidence for the plaintiffs' Title IX claims to survive summary judgment based on the University's maintaining an unsupervised recruiting program for high school students, the coach's knowledge of previous sexual assaults that had occurred during the program, and his "general knowledge of the serious risk of sexual harassment and assault during college-football recruiting efforts." 500 F.3d at 1184-85. The Tenth Circuit based its analysis not on the framework for Title IX harassment claims outlined by the Supreme Court in *Davis* and *Gebser*,[13] but on an alternative formulation similar to that used to hold a municipality liable for constitutional violations under 42 U.S.C. § 1983. *Id.* at 1177-78. ("Here, … the gist of the complaint is that CU sanctioned, supported, even funded, a program (showing recruits a 'good time') that, without proper control, would encourage young men to engage in opprobrious acts. We do not think that the notice standards established for sexual-harassment claims in *Gebser* and *Davis* necessarily apply in this circumstance.").

In departing from the typical framework, the court noted that the Supreme Court in *Gebser* specified its requirements apply to "'cases … that do not involve official policy of the [school district].'" *Id.* at 1177 (quoting *Gebser*, 524 U.S. at 290) (alteration by Tenth Circuit). In contrast, the court found that:

> [A] funding recipient can be said to have intentionally acted in clear
> violation of Title IX when the violation is caused by official policy, which
> may be a policy of deliberate indifference to providing adequate training or

---

[13] In this case, the Supreme Court held that a private right of action under Title IX for teacher-on-student harassment exists if the federal funding recipient has actual knowledge of the discrimination and fails to adequately respond (i.e., is deliberately indifferent to it). 524 U.S. at 290.

guidance that is obviously necessary for implementation of a specific program or policy of the recipient.

*Id.* at 1178 (internal quotation marks and citation omitted).[14]

Given the *Mathis* and *Simpson* decisions, as well as the imprecise formulation of what constitutes actual knowledge, the Court does not foreclose the possibility of Title IX liability based on a defendant's knowledge of prior harassment of victims other than the plaintiff by different perpetrators. At the same time, actual knowledge has to mean something. The theory of liability the Plaintiffs posit is more akin to a constructive notice or negligence standard. Because the Defendant knew of two past instances of sexual harassment involving different students, different scenarios, and, in one case, different schools within its system, it *should have* anticipated the attack on Jane Doe II. While

---

[14] The Plaintiffs also appear to argue for Title IX liability based on a failure-to-train theory and have supplemented their briefing by pointing to a recent case from the Northern District of Georgia, *D.H. ex rel Dawson v Clayton County School District*, 2014 WL 5088111 (N.D. Ga.) (discussing § 1983 failure-to-train claim in context of unconstitutional strip searches by employees at public school). It is true that the Supreme Court cited its § 1983 municipal liability precedent in holding that a funding recipient's conduct must rise to the level of deliberate indifference before it can be held liable for acts of either teacher-on-student or student-on-student sexual harassment and that the Tenth Circuit used a failure-to-train framework in *Simpson*. However, the Court is not persuaded failure-to-train precedent is perfectly analogous in this context. A municipality may be held liable under § 1983 on a failure-to-train theory where it is on actual *or constructive* notice "that a particular omission in [its] training program causes city employees to violate citizens' constitutional rights" and, in the face of this knowledge, retains the same training program. *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011). In contrast, the Supreme Court has clearly held that *actual* knowledge is required before Title IX liability can be imposed on a funding recipient for sexual harassment. *Davis*, 526 U.S. at 650; *Gebser*, 524 U.S. at 290. Thus, there may be cases where a municipality would be held liable under § 1983, but a funding recipient faced with analogous incidents of abuse would not be held liable under Title IX absent actual knowledge. Even assuming the validity of this theory, the Plaintiffs have not created a genuine issue of fact that such training was obviously necessary as the Tenth Circuit found it was in *Simpson*. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of … rights." *Connick*, 131 S. Ct. at 1360. In *Connick*, the Supreme Court held past *Brady* violations that were dissimilar to the one at issue could not have put officials on notice that "specific training was necessary to avoid this constitutional violation." *Id.* Likewise, the circumstances where unsupervised students sexually assaulted other students in 2002 and 2008 were not sufficiently similar to alert the Defendant that specific training of its employees was necessary.

this may be a good argument in a state law tort case, it has no place yet in the Title IX context.

In support of their position, the Plaintiffs cite *Ross v. Corp. of Mercer University*, a case from this district. 506 F. Supp. 2d 1325 (M.D. Ga. 2007) (Lawson, J.). A female student who was raped by another student sued Mercer under Title IX. The court found that Mercer officials had actual knowledge of six past incidents of sexual assault on Mercer's campus. *Id.* at 1352-53. However, the court ultimately concluded that Mercer officials were not deliberately indifferent to the prior harassment. *Id.* at 1355-56. The Court is not persuaded that *Ross* stands for the broad proposition that "actual knowledge of a significant risk of abuse" can be garnered from prior sexual assaults with no discernable connection to the plaintiff's assault other than their location on the same campus (or, in the present case, within the same school district). The most that can be said is that even if the prior incidents of harassment in *Ross* were sufficient to impart the requisite knowledge on the defendant, the defendant was not deliberately indifferent.[15]

The Plaintiffs attempt to frame their theory as "a long-standing, severely hostile sexual environment – completely unaddressed despite Defendant's own diagnosis of the source of the problem – [which] poses an ongoing threat to students other than those previously injured." (Doc. 77 at 26). But the Plaintiffs have not presented evidence of a "long-standing, severely hostile sexual environment." Even if the Court were to consider the statistical evidence of past instances of sexual assault at the

---

[15] The court in *Ross* even acknowledges that its actual knowledge determination with regard to one of the prior assaults is "inconsequential" in light of its finding the defendant was not deliberately indifferent. *Ross*, 506 F. Supp. 2d at 1353 n.45.

Defendant's schools, the Plaintiffs have presented no corresponding evidence to allow meaningful interpretation of the statistics. As the Defendant points out, the Plaintiffs have presented no statistical analysis from which the Court could draw any conclusion.

While the Court does not attempt to define how similar past instances of sexual harassment involving different victims and perpetrators must be for a defendant to be said to have actual knowledge of the type of harassment on which a plaintiff's claim is based, the instances in the present case are plainly insufficient. In the absence of a common perpetrator (or a victim of ongoing harassment), there must be another similarity to alert a defendant of a substantial risk of harassment to other students.

There is no indication the 2002 and 2008 incidents were the result of a similar systemic failure that also contributed to Jane Doe II's assault, which might have alerted the Defendant to a substantial risk of the same type of harassment. Had the 2002 and 2008 incidents involved the same gang as Jane Doe II's assault or involved students being released to other students without verification, there might be a genuine issue on the Defendant's actual knowledge. However, the Plaintiffs' characterization of the 2002 incident, 2008 incident, and Jane Doe II's alleged assault as resulting from "failure to maintain adult supervision in rooms accessible to students" misses the mark. Surely every student-on-student sexual assault results in part from a lack of adult supervision. As discussed above, general knowledge that student-on-student sexual assault may occur in the school setting is insufficient for Title IX liability. As it stands, the Plaintiffs have failed to create a genuine issue of fact on the Defendant's actual knowledge for their "before" theory of Title IX liability, and the Defendant is entitled to judgment as a matter of law.

## IV.	CONCLUSION

For the foregoing reasons, the Defendant's motion for partial judgment on the pleadings, converted to a motion for partial summary judgment, is **GRANTED**.

**SO ORDERED,** this 28th day of January, 2015.

>	S/ Marc T. Treadwell
>	MARC T. TREADWELL, JUDGE
>	UNITED STATES DISTRICT COURT